UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EDWARD EARL NICHOLSON, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>UTI WORLDWIDE, INC. et al.,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 3:09-cv-722-JPG-DGW |

**MEMORANDUM AND ORDER**

This matter comes before the Court on plaintiff Edward Earl Nicholson's motion (Doc. 44) and supplemental motion (Doc. 70) for conditional collective action certification pursuant to 29 U.S.C. § 216(b). Defendants UTi Worldwide, Inc. and UTi Integrated Logistics, Inc. (collectively "UTi") have responded to the motions (Docs. 52 & 82), and Nicholson has replied to those responses (Doc. 85).

**I.     Background**

From November 2008 to August 2009, Nicholson worked for UTi as a forklift operator in Edwardsville, Illinois. Nicholson was an hourly worker protected by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1 *et seq*. Nicholson alleges that during his employment, UTi required its forklift operators like him to "work before their paid shifts donning special clothing and protective gear, locating forklifts, inspecting forklifts, completing inspection documents, changing forklift batteries, logging into computer systems and applications, obtaining supplies, and driving or walking to assigned work areas." Am. Compl. ¶ 1. He claims he and other forklift operators were sometimes required to replace pallets and arrange work areas before their paid shifts began,

and were required to work during unpaid lunch breaks. *Id.*

Nicholson filed this lawsuit in September 2009. Following the Court's dismissal of some of his claims, the following claims pled in the amended complaint remain:

Count I: a claim for failure to pay overtime wages in violation of the FLSA, 29 U.S.C. § 207(a)(1);

Count II: a claim for failure to pay overtime wages in violation of the IMWL, 820 ILCS § 105/41(a);

Count III: a claim for breach of contract for failure to pay contracted wages;

Count IV: a quantum meruit claim for unpaid "gap time" (hours worked before the employee reaches the forty-hour per week overtime threshold that were not paid at the correct rate of pay); and

Count V: an unjust enrichment claim for unpaid "gap time."

In his original motion, Nicholson asks for conditional collective action certification under 29 U.S.C. § 216(b) of:

> All current and former hourly-paid forklift operators employed by Defendants at the Madison County, Illinois, facilities in the past three years

for the FLSA claim in Count I. Nicholson submitted three affidavits from former UTi forklift operators in support of his motion.

UTi responded to Nicholson's original motion by arguing that the Court should disregard the affidavits in support of the motion, that the affidavits do not adequately support conditional collective action certification and that the putative plaintiff class is otherwise unsuitable for class treatment because individual issues predominate over class issues. Additionally, UTi objects to Nicholson's proposed form and method of distribution of the class notice, should the action be

and were required to work during unpaid lunch breaks. *Id.*

Nicholson filed this lawsuit in September 2009. Following the Court's dismissal of some of his claims, the following claims pled in the amended complaint remain:

Count I: a claim for failure to pay overtime wages in violation of the FLSA, 29 U.S.C. § 207(a)(1);

Count II: a claim for failure to pay overtime wages in violation of the IMWL, 820 ILCS § 105/41(a);

Count III: a claim for breach of contract for failure to pay contracted wages;

Count IV: a quantum meruit claim for unpaid "gap time" (hours worked before the employee reaches the forty-hour per week overtime threshold that were not paid at the correct rate of pay); and

Count V: an unjust enrichment claim for unpaid "gap time."

In his original motion, Nicholson asks for conditional collective action certification under 29 U.S.C. § 216(b) of:

> All current and former hourly-paid forklift operators employed by Defendants at the Madison County, Illinois, facilities in the past three years

for the FLSA claim in Count I. Nicholson submitted three affidavits from former UTi forklift operators in support of his motion.

UTi responded to Nicholson's original motion by arguing that the Court should disregard the affidavits in support of the motion, that the affidavits do not adequately support conditional collective action certification and that the putative plaintiff class is otherwise unsuitable for class treatment because individual issues predominate over class issues. Additionally, UTi objects to Nicholson's proposed form and method of distribution of the class notice, should the action be

certified.

Nicholson has supplemented his motion with a request for conditional collective action certification of the following class:

> All current and former hourly-paid forklift operators employed by Defendants in the United States during the past three years.

He argues that company-wide policies requiring forklift operators to perform certain tasks prior to operating forklifts and to be "ready" to work when they clock in and at their scheduled work times supports broader certification. In support of this collective plaintiff class, Nicholson has submitted additional affidavits from potential plaintiffs

UTi reiterates the arguments it made in response to Nicholson's original motion and notes that they are even more compelling in opposition to the broader request for nationwide certification. It further argues that the uniform policies Nicholson points to are not unlawful and cannot serve as the basis for collective action certification.

**II.     Analysis**

Nicholson alleges in Count I a claim for failure to pay overtime compensation in violation of the FLSA, 29 U.S.C. § 207(a)(1), which provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." An employer can violate this provision of the FLSA even if it did not direct or require unpaid overtime work; it is enough if the employer knew about the overtime work and permitted it to go on without paying for it. *See* 29 U.S.C. § 203(g) ("'Employ' includes to suffer or permit to work."); 29 C.F.R. § 785.13 ("[I]t is the duty of the management to exercise its control and see that the work is not performed if it

does not want it to be performed. It cannot sit back and accept the benefits without compensating for them."); *Adair v. Wisconsin Bell, Inc.*, No. 08-C-280, 2008 WL 4224360, at *7 (E.D. Wis. Sept. 11, 2008) ("Even if overtime work is not required by an employer, but merely permitted, the FLSA may be violated if an employee is not compensated for such work she performs.").

The FLSA further provides that an action to recover liability for unpaid overtime compensation "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). In order to be included in an action brought on behalf of a group of similarly situated employees, a claimant must affirmatively opt into the action. *Id.* A collective action allows FLSA plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged [unlawful] activity." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (age discrimination case implementing FLSA enforcement mechanism).

Courts have developed a two-step process to implement a plaintiff's right under § 216(b) to bring an action on behalf of others similarly situated to him. *See, e.g., Petersen v. Marsh USA, Inc.*, No. 10 C 1506, 2010 WL 5423734, at *2 (N.D. Ill. Dec. 23, 2010) (citing *Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930, 933 (N.D. Ill. 2008)). At the first step, sometimes called the notice stage, a plaintiff is required to show that there are "similarly situated employees who are potential claimants." *Smallwood v. Illinois Bell Tel. Co.*, 710 F. Supp. 2d 746, 750 (N.D. Ill. 2010). The plaintiff can do this by making a "modest factual showing" that he and other potential plaintiffs were victims of a common unlawful policy or plan. *Id.* (quoting *Flores*

*v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003)). "[A] plaintiff need only demonstrate a factual nexus that binds potential members of a collective action together." *Gambo v. Lucent Techs., Inc.*, No. 05 C 3701, 2005 WL 3542485, *4 (N.D. Ill. Dec. 22, 2005). At this stage, the Court does not resolve factual disputes, decide substantive issues going to the merits or make credibility determinations. *Marshall v. Amsted Indus., Inc.*, No. 10-cv-11-MJR-CJP, 2010 WL 2404340, * 5 (S.D. Ill. June 16, 2010). If the plaintiff succeeds at the notice stage, the Court will conditionally certify the collective action and will authorize notice of the action to potential plaintiffs who may want to join. *Smallwood*, 710 F. Supp. 2d at 750. The standard at the notice stage is lenient, *Russell*, 575 F. Supp. 2d at 933, and courts have broad discretion to implement the notice provisions of § 216(b), *Hoffman-La Roche*, 493 U.S. at 169.

  The second step occurs after the opt-in period and further discovery. There, at a defendant's request, the Court asks "whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Smallwood*, 710 F. Supp. 2d at 750 (internal quotations omitted). If there is not sufficient similarity, the Court may reconsider its decision to allow the case to proceed as a collective action and dismiss the opt-in plaintiffs' claims without prejudice. *Russell*, 575 F. Supp. 2d at 933; *Marshall*, 2010 WL 2404340 at * 5.

  To support its application for conditional collective action certification at the notice stage of the two-step process, Nicholson points to a number of affidavits from current or past forklift operators who worked at UTi and several UTi company policies. UTi argues that the affidavits should be disregarded and that the company policies do not evidence any wrongful conduct.

  As a preliminary matter, the company policies Nicholson cites do not, on their face, indicate any UTi employee was the victim of an unlawful policy. The relevant policies require

5

forklift operators to clock in "when they are ready to begin work" (Wages and Payroll Practices), and to "be at their work area, ready to begin work at the scheduled time" (Attendance and Punctuality Policy). Nicholson asserts that these policies, on their face, require forklift operators to perform tasks (such as, for example, those required by the Occupational Safety and Health Administration, inspecting forklifts, changing forklift batteries or completing paperwork) before clocking in so they will be "ready" to drive forklifts at the beginning of their shift. UTi, on the other hand, explains that it views tasks such as those mentioned by Nicholson as part of a forklift operator's paid work and that the policies simply mean the operator should visit the bathroom and eat his breakfast, etc., before clocking in, at which time he should be "ready" to perform those tasks on his paid time. UTi's explanation of its policy as written is imminently reasonable. Consequently, the Court agrees with UTi that its written policies do not, on their face, indicate any policy in violation of the FLSA overtime pay rules.

However, Nicholson also alleges that UTi does not implement those "ready to work" policies in the harmless way they can be interpreted. In support of this position, Nicholson offers a number of affidavits describing UTi's actual practice. Nicholson's affidavit states that during his time working for UTi as a forklift operator at three of its warehouses in Edwardsville, his supervisors required him to perform substantial tasks for approximately ten to fifteen minutes before his paid shift began so that he would be "ready to work" driving his forklift at the start of his shift. He also states that he observed other forklift operators performing those tasks before their paid shifts began and that he and other forklift operators sometimes worked during their unpaid lunch breaks. Nicholson further states that UTi managers had told him that the same practices existed at other UTi facilities in Texas and South Carolina. Nicholson also submits affidavits from Tanisha Cook and Vicki Blakely, both of which echoed Nicholson's testimony

about pre-shift and lunchtime work.

In his reply brief, Nicholson attaches five more affidavits from current or former UTi forklift operators Curt Brown, Jr., Kevin Dunn, Victor Grinston, Kevin Keating and Weli Adam. The affidavits recount the same pre-work and lunchtime work practices about which Nicholson testified.  They also state that UTi trainers from other UTi facilities, including Texas, South Carolina and Georgia facilities, had told the UTi Edwardsville forklift operators that the "ready to work" policy implementation and lunchtime work practice described by Nicholson were also used at other UTi facilities and were company policy.

UTi asks the Court to disregard the first three affidavits because they were vague, speculative and lacked foundation.  It notes they do not contain the names of any specific forklift operators the affiants observed working off the clock or supervisors who directed the off-the-clock work.  It also notes the affidavits do not state any specific shift beginning times and were limited to observations at one of UTi's three warehouses.  Presumably it would challenge the other affidavits submitted with Nicholson's reply brief on the same grounds.

The Court will not disregard the affidavits tendered by Nicholson in support of his conditional certification request.  While they do not contain many specifics, they purport to be based on personal knowledge and contain enough details to paint a picture of the relevant employment practices at UTi's Edwardsville warehouses.  Whether testimony from the affiants will be sufficient to justify relief in the end will be a matter to be decided later in this litigation.

UTi also argues that, even considering the affidavits, they do not amount to the "modest factual showing" of a group of victims of a common unlawful policy or plan.  UTi contends that any direction to work off the clock was the product of rogue supervisors who were not implementing company policy.  It further notes that the affiants had limited exposure to practices

relating to UTi's forklift operators in general because either their employment tenure was short, they had few supervisors, they only worked in one warehouse, they only worked one shift or all of these reasons. The evidence shows, however, that despite these limitations the affiants were required to work overtime off the clock before work and during lunch and that company officials represented that those practices were company policy used in other UTi facilities in at least three other states. This is sufficient to make the modest factual showing of a group of similarly situated employees who were victims of a common unlawful unpaid overtime policy. That the specific tasks may have been different tasks at different facilities is unimportant; as long as forklift operators were required or allowed to work overtime off the clock, they were impacted in the same way by the same unlawful policy. The Court acknowledges that UTi vigorously disputes the veracity of the affidavits tendered by Nicholson and offers a contrary view of the daily activities of forklift operators at its warehouse facilities. Indeed, the Court wonders whether the witnesses are even talking about the same facilities at all. However, witness credibility will be an issue to be resolved later in this litigation. *See Marshall*, 2010 WL 2404340 at * 5; *Summa v. Hofstra Univ.,* 715 F. Supp. 2d 378, 385 (E.D.N.Y. 2010).

Finally, UTi argues that conditional collective action certification would be inappropriate in light of the individual issues that will predominate if damage determinations are necessary. Each forklift operator, UTi notes, will have to present evidence of the specific hours worked off the clock, and the evidence for each operator will be different. It is true that some courts have refused to certify a collective action where individual issues predominate over common issues. *See, e.g., Castle v. Wells Fargo Fin., Inc.*, No. C 06-4347 SI, 2008 WL 495705, 5 ((N.D. Cal. Feb. 20, 2008) (individualized inquiries predominated in FLSA claims for off-the-clock overtime by employees in four job categories; no conditional certification). However, the most

predominant issue in this case will be whether UTi had a policy or practice of directing or allowing unpaid overtime work by employees in a single job category where the off-the-clock tasks appear to be similar, although not identical, for each forklift operator. If liability is established, individual damages issues can be handled using a systematic protocol by the Court, perhaps with the assistance of other judicial officers in the district, to reduce the burden on the Court and on the parties until all claims are resolved or a reasonable settlement position is reached. If after discovery it becomes apparent that this process would be impracticable, UTi may ask the Court to decertify the collective action at the second step of the two-step collective action certification process.

For the foregoing reasons, the Court will grant Nicholson's motion for conditional collective action certification of a nationwide class of UTi forklift operators (Docs. 44 & 70).

### III.    Notice

Nicholson asks the Court to order UTi to produce the names, addresses, dates of employment and facility locations for all forklift operators it has employed within the past three years so that Nicholson can distribute the notice to potential collective action plaintiffs. He also asks the Court to order UTi to post the notice in the break rooms at its warehouse facilities. Nicholson submitted a proposed notice, but after Judge Reagan's decision certifying a collective action in *Marshall v. Amsted Industries, Inc.,* No. 10-cv-11-MJR, it indicated a notice similar to *Marshall*'s would be acceptable.

UTi objects to Nicholson's original proposed notice, but some of its objections have been resolved by the Court's decision to certify a class of forklift operators at all UTi's facilities and by Nicholson's concession that a notice similar to *Marshall*'s should be used. Others must be resolved by the Court.

To assist the Court in deciding the form of the notice to be sent to potential plaintiffs, the Court will direct the parties to submit to the Court's e-mailbox (jpgpd@ilsd.uscourts.gov) copies of their respective proposed notices in either Word or WordPerfect format. The Court will reserve ruling on the format of the notice pending receipt and review of these documents.

**IV.    Conclusion**

For these reasons, the Court:

- **GRANTS** Nicholson's motion for conditional collective action certification of a nationwide class (Docs. 44 & 70);

- **CONDITIONALLY CERTIFIES** this case as a collective action under the FLSA, 29 U.S.C. § 216(b), for the following plaintiff class:

  All current and former hourly-paid forklift operators employed by UTi Worldwide, Inc. or UTi Integrated Logistics, Inc. in the United States during the past three years;

- **ORDERS** the parties to submit their respective proposed notices to the Court's e-mailbox in either Word or WordPerfect on or before February 1, 2011; and

- **AUTHORIZES** Nicholson to send notice under § 216(b) to all current and former forklift operators who worked for UTi in the past three years, although it **RESERVES RULING** on the content and format of that notice.

**IT IS SO ORDERED.**
**Dated:  January 26, 2011**

s/ J. Phil Gilbert<br>
**U.S. District Court Judge**