UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

EDWARD EARL NICHOLSON, )
individually and on behalf of all )
others similarly situated, ) Case No. 3:09-cv-722-JPG-DGW
)
      Plaintiff, )
)
v. )
)
UTI WORLDWIDE, INC. et al., )
)
      Defendants. )

**MEMORANDUM AND ORDER**

This matter comes before the Court on plaintiff Edward Earl Nicholson's motion for class action certification of Counts II, III, IV and V under Federal Rule of Civil Procedure 23 (Doc. 94). Defendants UTi Worldwide, Inc. and UTi Integrated Logistics, Inc. (collectively "UTi") have responded to the motion (Doc. 104), and Nicholson has replied to that response (Doc. 106). In addition, Nicholson has filed supplemental authority, but not using the procedure for supplementing a motion found in Local Rule 7.1(g). However, the Court was aware of the supplemental citation even before Nicholson pointed it out and will consider it despite Nicholson's procedural error.

**I.    Background**

The Court has set forth the background of this case in a recent order granting conditional collective action certification of Count I pursuant to § 216(b) of the Fair Labor Standards Act 29 U.S.C. § 216(b):

> From November 2008 to August 2009, Nicholson worked for UTi as a forklift operator in Edwardsville, Illinois. Nicholson was an hourly worker protected by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 820 ILCS § 105/1 *et seq.* Nicholson alleges that during his employment, UTi required its forklift operators like him to

> "work before their paid shifts donning special clothing and protective gear, locating forklifts, inspecting forklifts, completing inspection documents, changing forklift batteries, logging into computer systems and applications, obtaining supplies, and driving or walking to assigned work areas." Am. Compl. ¶ 1. He claims he and other forklift operators were sometimes required to replace pallets and arrange work areas before their paid shifts began, and were required to work during unpaid lunch breaks. *Id.*

(Doc. 110).

In conjunction with the pending motion for class certification, Nicholson charges that this "off-the-clock" work was facilitated by time-clock policies that (1) rounded an employee's clock-in time to the time of his scheduled shift if he clocked in less than fifteen minutes (or seven minutes, at one facility) before his shift started and (2) automatically deducted thirty minutes for an unpaid lunch break regardless of an employee's lunchtime clock-out and clock-in times.

UTi maintains that the clock-in rounding policy reflected the fact that an employee was allowed to clock in within fifteen (or seven, at one facility) minutes before his shift began but was not required to work until his shift time, at which time he attended a safety meeting or performed the tasks Nicholson lists in the amended complaint. It also notes that employees were given a thirty-minute lunch break and were never required to work during that break time.

Nicholson filed this lawsuit in September 2009. Following the Court's dismissal of some of his claims, the following claims pled in the amended complaint remain:

Count I: a claim for failure to pay overtime wages in violation of the FLSA, 29 U.S.C. § 207(a)(1);

Count II: a claim for failure to pay overtime wages in violation of the IMWL, 820 ILCS § 105/41(a);

Count III: a claim for breach of contract for failure to pay contracted wages;

Count IV: a quantum meruit claim for unpaid "gap time" (hours worked before the employee reaches the forty-hour per week overtime threshold that were not paid at the correct rate of pay); and

2

Count V:    an unjust enrichment claim for unpaid "gap time."

As noted above, the Court has conditionally certified Count I as a collective action under the FLSA. Nicholson now asks the Court to certify the following class under Rule 23 for Counts II through V:

> All current and former UTi employees in the State of Illinois whose primary job duty is/was to operate a forklift at any time from September 14, 2004, to the present.

UTi objects to certification on the grounds that Nicholson has not established that the number of putative class members is large enough to justify class treatment. It also argues that common questions of law or fact do not predominate in this litigation and that a class action is not superior to other methods of resolving the issues. In a footnote, it also objects to other requirements for class certification under Rule 23(a), but since it has not supported those arguments adequately, it has waived them. *See Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) (perfunctory, underdeveloped and unsupported arguments are waived); *Perry v. Sullivan*, 207 F.3d 379, 382 (7th Cir. 2000).

As in its opposition to conditional collective action certification of Count I under the FLSA, UTi challenges the affidavits Nicholson has submitted in support if its request for class certification. Nicholson has submitted a number of affidavits from current or past forklift operators who worked at UTi and who stated that trainers told them they had to perform certain work tasks before the beginning of their shifts. UTi argues that the affidavits should be disregarded because they are vague, speculative and lack foundation. It notes they do not contain the names or identifying descriptions of any trainers who directed the off-the-clock work. UTi has submitted opposing affidavits from the trainers themselves stating that they never directed such work. Nicholson's affidavits need not be disregarded simply because they lack the equivalent

3

amount of factual detail as UTi's affidavits. Nicholson's affidavits purport to be based on personal knowledge and contain enough details to paint a picture of the relevant employment practices at UTi's Edwardsville warehouses and other UTi facilities, and that is all that is required. The conflicting affidavits merely show that there is an issue of fact for trial. Whether testimony from the affiants will be sufficient to justify relief in the end will be a matter to be decided later in this litigation.

UTi also invites the Court to visit the merits of this case. However, as explained below, such an inquiry goes beyond the Court's role at this point of the litigation, which is simply to decide if class certification is appropriate.

**II.     Analysis**

A principal purpose of class certification is to save the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical manner. *See General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 155 (1982). The Court may certify a class if it satisfies all four provisions of Federal Rule of Civil Procedure 23(a), at least one provision of Rule 23(b) and the implied prerequisites that a class be ascertainable and that the class representative be within the class. It is the moving party's burden to establish that each of the prerequisites of Rule 23 is satisfied. *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 161 (1982); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). A plaintiff's failure to satisfy any of the Rule 23 requirements precludes class certification. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993) (citing *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993)).

Generally, when ruling on a motion for class certification, the Court does not consider the merits of the case; rather, the Court focuses on whether the certification requirements are

satisfied. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). "'[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'" *Id.* (quoting *Miller v. Mackey Int'l, Inc.*, 452 F.2d 424 (5th Cir. 1971)). Thus, the Court's role in the action currently under review is to "determine whether the plaintiff[s are] asserting a claim which, assuming its merits, would satisfy the requirements of Rule 23." *See* H. Newberg, 8 *Newberg on Class Actions*, § 24.13 (3d ed. 1992).

Nonetheless, the determination of a class certification motion may involve some consideration of the factual and legal issues that comprise the plaintiff's cause of action. *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978). While the Court may not consider arguments directly on the merits, it may make a preliminary inquiry into the merits of the action when necessary to determine whether the requirements for class certification have been met. *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676-77 (7th Cir. 2001). For example, it may take into account the substantive elements of a plaintiff's claims and the proof necessary to those elements so as to envision the form trial on those issues would take. *Elliott v. ITT Corp.,* 150 F.R.D. 569, 573 (N.D. Ill. 1992) (citing *Simer v. Rios*, 661 F.2d 655, 672 (7th Cir. 1981)).

The Court must rigorously assess whether the prerequisites have been met, *see Falcon*, 457 U.S. at 161, and, if the party seeking class certification meets each of them, the Court must certify the proposed class, *see Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1437 (2010) (noting "a categorical rule entitling a plaintiff whose suit meets the specified criteria [of Rule 23] to pursue his claim as a class action"); *Vickers v. Trainor*, 546 F.2d 739, 747 (7th Cir. 1976); *Fujishima v. Board of Educ.*, 460 F.2d 1355, 1360 (7th Cir. 1972). The Court has broad discretion to determine whether a proposed class satisfies the requirements, *Keele v. Wexler,* 149

F.3d 589, 592 (7th Cir. 1998); *Patterson v. General Motors Corp.*, 631 F.2d 476, 480 (7th Cir. 1980), and should err in favor of maintaining class actions, *King v. Kansas City S. Indus., Inc.*, 519 F.2d 20, 26 (7th Cir. 1975).

A. <u>Implied Prerequisites</u>

Before the Court can address the issues raised by Rule 23, the moving party must satisfy two implied prerequisites of Rule 23. The first is that the class is sufficiently defined so as to be identifiable as a class. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981) ("It is axiomatic that for a class action to be certified a 'class' must exist."); *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977); *Duffin v. Exelon*, No. CIV A 06 C 1382, 2007 WL 845336 at *3 (N.D. Ill. Mar. 19, 2007). The second is that the named representative fall within the class. *Alliance to End Repression*, 565 F.2d at 977.

The plaintiff proposes a class consisting of all individuals employed by UTi in Illinois whose primary job duty is or was to operate a forklift at any time from September 14, 2004, to the present. The Court finds the class is sufficiently identifiable as a class and is not overbroad. It will be a relatively simple matter to ascertain who is in the classes by reference to objective criteria contained within UTi's employee records and job descriptions. Furthermore, it is clear that the named representative falls within the class definition. Thus, Nicholson has satisfied the implied prerequisites to class certification.

B. <u>Rule 23(a)</u>

Rule 23(a) allows a plaintiff to sue on behalf of a class only if all four of the following elements are satisfied:

(1) the class is so numerous that joinder of all members is impracticable;

> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

### 1. Numerosity of Parties

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). When the class is large, numbers alone may be dispositive of numerosity, *see Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986), and generally a class of more than forty members is sufficient to satisfy Rule 23(a)'s numerosity requirement, *see Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 326 (N.D. Ill. 2010). The Court can rely on a plaintiff's good faith estimate of the number of class members if that estimate is reasonable and not speculative. *Id*.

Nicholson seeks to represent more than 1,250 forklift operators employed by UTi in the state of Illinois since September 14, 2004, who are or were subject to the alleged company policies requiring pre-shift work and implementing time-clock rounding and lunch time deductions that resulted in uncompensated work time. UTi argues that the evidence shows employees only infrequently clocked in before their shift time and fails to distinguish between overtime and gap time claims.

UTi's arguments miss the mark. Each record in the file shows that some time between when the relevant employee clocked in and when his or her shift began – time Nicholson claims the employee was working – was rounded away. The frequency of this rounding for each employee is not relevant to how many employees claim to have been affected by the policy, and

the evidence suggests numerous employees were. In any case, Nicholson does not need to show a probability of success on a certain number of class members' claims to have them counted toward the numerosity requirement. Furthermore, whether the alleged unpaid time was for overtime or gap time – that is, whether employee worked more or less than forty hours in the week that contained the alleged unpaid time – is a question of damages and will not prevent certification of a class that likely numbers more than 1,250. It is clearly impracticable to join more than 1,250 employees in a single action, so the plaintiff has satisfied the numerosity requirement.

    2.   Commonality of Issues

  A named class representative may sue on behalf of the class only if there are questions of law or fact common to the class. This commonality requirement serves the dual purposes of (1) fair and adequate representation of the interests of absent class members and (2) practical and efficient case management. 5 James Wm. Moore *et al.*, *Moore's Federal Practice* ¶ 23.23 (3d ed. 1999). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Common nuclei of fact are typically manifest where the defendants have engaged in standardized conduct towards members of the proposed class. *Id.*; *see also Chandler v. Southwest Jeep-Eagle, Inc.*, 162 F.R.D. 302, 308 (N.D. Ill. 1995). Some factual variation in the details of individual claims does not defeat a finding of commonality. *Rosario*, 963 F.2d at 1017. Courts give Rule 23(a)(2) a "highly permissive reading," requiring plaintiffs to show only that there is more than one issue of law or fact in common. *See Markham v. White*, 171 F.R.D. 217, 222 (N.D. Ill. 1997); *Wagner v. NutraSweet Co.*, 170 F.R.D. 448, 451 (N.D. Ill. 1997).

  The case at bar presents common questions of law and fact regarding the implementation

of UTi's time-clock rounding, "ready to work" lunchtime work policies and whether those policies resulted in its forklift operators working before their shifts and during lunch breaks without being paid properly for that work time. For this reason, the Court finds that the highly permissive commonality requirement is met.

### 3. Typicality of Claims and Defenses

Whether the named plaintiff's claims are typical of those of the class members they represent is closely related to the commonality inquiry, but problems with commonality often take on greater significance in the typicality context. *See Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("The question of typicality in Rule 23(a)(3) is closely related to the . . . question of commonality."). Subsection (a)(3) directs the Court to focus on whether the named representative's claims have the same essential characteristics as the claims of the class at large. *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Id.*

Despite the apparent similarity, the commonality and typicality requirements serve different functions. The commonality requirement questions the relationship of the claims among the class itself, while the typicality requirement focuses on the relationship between the representatives and the class as a whole. The Court should concentrate on the defendant's alleged conduct and the plaintiff's legal theory to satisfy Rule 23(a)(3). *Rosario*, 963 F.2d at 1018. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiff and those of other class members. *De La Fuente*, 713 F.2d at 232. Thus, similar legal theories may control even in the face of different facts. *Id.* "Properly applied, these guidelines should uphold the rationale behind the typicality requirement, namely that 'a plaintiff

9

with typical claims will pursue his or her own self-interest in the litigation and in so doing will advance the interests of the class members, which are aligned with . . . those of the representative.'" *Insolia v. Philip Morris Inc.*, 186 F.R.D. 535, 544 (W.D. Wis. 1998) (quoting 1 H. Newberg, *Newberg on Class Actions*, § 3.13 (3d ed. 1992)).

Nicholson's claims appear to be typical of those belonging to the putative class in that he seeks compensation for unpaid time UTi required or permitted him to work pre-shift and during lunch breaks, either overtime or straight time depending on how many hours Nicholson worked that week. His claims are of the same essential character as putative class members' claims in that all rely on the same legal theories – compliance with Illinois law relating to wage payment – and arise out of the same uniform course of conduct – implementation of the time-clock rounding, "ready to work" and lunchtime work policies. The Court is confident that in pursuing his own claims, Nicholson will advance the interests of the putative class members. Thus, Nicholson's claims are typical of those of the proposed class.

    4.  <u>Adequacy of Representation</u>

The adequacy of representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997). The proposed class representative must at a minimum "possess the same interest and suffer the same injury as the class members." *East Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) (internal quotation omitted); *accord Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). He must also not have any interests in conflict with those of other members of the class and must have a sufficient interest in the litigation to ensure vigorous advocacy. *Chandler v. Southwest Jeep-Eagle, Inc.,* 162 F.R.D. 302, 308 (N.D. Ill. 1995)) (internal quotation omitted); *see Spano v. The Boeing Co.*, Nos. 09-3001 &

09-3018, 2011 WL 183974, * 11 (7th Cir. Jan. 21, 2011).

There is no hint that Nicholson lacks a sufficient interest in the outcome such that he will not be a vigorous class advocate. Therefore, the Court finds Nicholson will fairly and adequately protect the interests of the class in this litigation.

Having found Nicholson satisfies the requirements of Rule 23(a), the Court now turns to the requirements of Rule 23(b).

   C.   Rule 23(b)

If all of the elements of Rule 23(a) are met, the moving party must also show one of the elements outlined in Federal Rule of Civil Procedure 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). Rule 23(b) states that a class action may be maintained only if one of three conditions is satisfied:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
>
> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. . . .

Fed. R. Civ. P. 23(b). The plaintiffs request certification under Rule 23(b)(3).

11

1. Rule 23(b)(3)

Rule 23(b)(3) requires that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action be superior to other ways of adjudicating the controversy. Fed. R. Civ. P. 23(b)(3); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). This category was designed "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Amchem*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23 advisory committee's note to 1996 amendment).

a. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Rule 23(b)(3) predominance requirement overlaps considerably with Rule 23(a)(2)'s commonality requirement, although the predominance requirement is "far more demanding." *Id.* at 624. Rule 23(a)(2) requires common issues of law or fact, and Rule 23(b)(3) requires that such common issues not only exist but predominate over others in the case. *Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1419 (N.D. Ill. 1996). "When a proposed class challenges a uniform policy, the validity of that policy tends to be the predominant issue in the litigation." *Streeter v. Sheriff of Cook County*, 256 F.R.D. 609, 614 (N.D. Ill. 2009) (questions regarding uniform jail strip search policy predominated over questions regarding individual justification for each search). Differences in proposed class members' damages need not prevent certification under Rule 23(b)(3). *See Arreola v. Godinez*, 546 F.3d 788, 800-01 (7th Cir. 2008) ("Although the extent of each class member's personal damages might vary, district

12

judges can devise solutions to address that problem if there are substantial common issues that outweigh the single variable of damages amounts.").

Nicholson argues that the predominant question in this litigation is whether Uti had uniform policies that required or allowed its forklift operators to work during time that was subtracted from their clocked hours.

On the other hand, UTi argues that the predominant issues in this case will be individual questions about the alleged unpaid work time. It believes that the litigation of all the state law counts will be fraught with questions regarding what *each* forklift operator did during *each* time period that was subtracted from his clocked hours and whether any work done required compensation because it was more than *de minimis*. In addition, UTi contends Count III (breach of contract) will require individual examination of whether each forklift operator had a contract with UTi and whether each operator breached that contract by voluntarily working off the clock. Finally, with respect to Counts IV (quantum meruit) and V (unjust enrichment), UTi argues that the factfinder must make specific inquiries into *each* forklift operator's payment expectations for the work he performed and the value of that work.

The Court noted above that this case presents common questions of law and fact regarding the implementation of UTi's time-clock rounding, "ready to work" and lunchtime work policies and whether those policies resulted in its forklift operators working before their shifts and during lunch breaks without being paid properly for that work time. It will also clearly involve individual issues regarding damages to be awarded to each class member if the class prevails. However, the common issues predominate over the damages issues and are good candidates for unitary adjudication. The predominant question in this case revolves around whether UTi had or did not have uniform policies of requiring or allowing work without pay.

Differences in the proposed class members' damage amounts will not prevent certification under Rule 23(b)(3) because the Court can devise manageable ways to assess those differences, if necessary, once the predominant policy question is decided. With respect to damage calculations, if necessary, it appears likely that UTi's detailed records regarding truncated time will streamline certain individualized inquiries because they will show on their face clock-in times and amounts rounded off. Whether such time falls into the overtime or gap time category can be easily ascertained by review of additional time records. It is true that determining whether the activities the worker performed during the truncated time were compensable will require some individual inquiry, but the Court is confident the parties can devise some way of presenting that evidence in an efficient, admissible form. Finally, the existence of a contract and the value of services provided during the unpaid time can be easily estimated based on the worker's wages and other terms of employment.

The Court notes that this is not a case in which a group of employees claims to have occasionally or sporadically worked time without being paid for it. On the contrary, Nicholson alleges a common, state-wide, uniform policy of mandating work after employees have clocked in but before the shift begins, and then systematically truncating that and other time worked – pre-shift and lunch time – from employees' paid hours. UTi offers one primary defense: it did not require unpaid work. In this type of case, a unitary adjudication would be an efficient means to determine whether that policy existed. That question clearly predominates in this litigation.

     b.  <u>Superiority</u>

The second part of Rule 23(b)(3) requires a determination whether class action is superior to other means of adjudicating this dispute. The Court considers, among other factors:

 (A) the class members' interests in individually controlling the prosecution or

> defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

UTi argues that class certification under Rule 23 is incompatible with the existing conditional collective action certification under the FLSA. Whether a Rule 23 class action could co-exist with an FLSA collective action in a combined action was an open question until recently, when the Court of Appeals for the Seventh Circuit held that FLSA certification did not preclude Rule 23 certification if all the Rule 23 requirements were met. *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011). Thus, this Court's conditional certification of a similar claim (Count I) as a collective action under the FLSA is not incompatible with certification of the remaining claims under Rule 23, and litigation of the FLSA claim alone does not necessarily provide a superior method of resolving the disputes in this case.

After considering the relevant factors regarding superiority, the Court concludes that class treatment of Counts II, III, IV and V is the superior method of resolving those claims. It appears that the amount each potential class member stands to gain in this lawsuit is not large enough to motivate them to pursue their claims separately. After all, some class members may only have worked an extra ten minutes per day for a couple of months; their potential recovery might not even be enough to cover a court filing fee. Instead, it is likely that class members would want their claims decided with the efficiencies of a representative class action brought by an adequate representative, especially where the predominant issues are already headed for determination in

15

connection to Count I. Additionally, the Court is not aware of another proceeding outside of this case seeking remedies for the same alleged wrongs at issue here. The Court further notes that, although the conditional collective action in Count I may address overtime issues, it does not address gap time issues. Thus, proceeding on Count I alone is not a superior method of deciding all the issues in this case. Finally, as discussed above, despite the individualized damages inquiries that may be required if the class prevails, this case will be manageable as a class action.

For these reasons, the Court finds the predominance and superiority requirements of Rule 23(b)(3) are met.

### D. Class Definition

UTi urges the Court to limit any certification under Rule 23 to workers at its three Edwardsville, Illinois, warehouses because all of the affidavits submitted in support of class certification come from workers at that complex. However, some of those affidavits show company officials represented that the alleged practices at issue were company policy in other UTi facilities as well. *See, e.g.,* Doc. 94-9, Nicholson aff. ¶ 8; Doc. 94-13, Brown aff. ¶¶ 3-5. This is enough to justify a state-wide class.

Additionally, in connection with the conditional collective action certification of Count I under the FLSA, the Court has become aware of a potential ambiguity in the proposed class definition. In connection with Count I, the Court conditionally certified a collective action of "forklift operators employed by" UTi. After conditional certification, UTi argued that this definition did not include workers hired through temporary staffing agencies. In an order dated April 18, 2011 (Doc. 136), the Court clarified that its conditional certification of Count I as a collective action included certification of workers employed by a temporary staffing agency who performed work for UTi. The Court intends those workers likewise to be included in the Rule 23

16

class for Counts II, III, IV and V as well. Accordingly, to prevent any further confusion, the Court will modify the class definition to read:

> All current and former employees of UTi Worldwide, Inc. or UTi Integrated Logistics, Inc. in the State of Illinois, whether employed directly by UTi Worldwide, Inc. or UTi Integrated Logistics, Inc. or indirectly through a temporary staffing agency, whose primary job duty is or was to operate a forklift at any time from September 14, 2004, to the present.

E. <u>Appointment of Class Counsel</u>

Under Rule 23(g)(1), if the Court certifies a class, it must appoint class counsel to fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(4). In naming class counsel, the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). It may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(b)(1)(B).

Richard M. Paul III, of the Stueve Siegel Hanson LLP law firm, and Mark Potashnick, of the Weinhaus & Potashnick law firm, seek appointment as class counsel in this case.[1] UTi does not object to their appointment, and the materials submitted in support of their appointment show they are well-qualified to represent the plaintiff classes in this case.

---

[1]The request is actually to have the law firms appointed as class counsel. This Court, however, does not appoint firms; it appoints lawyers. Accordingly, the Court entertains the request to the extent it seeks appointment of the lawyers for whom credentials have been submitted.

F.     Class Notification

Nicholson asks the Court to order UTi to produce certain information regarding class members to facilitate the distribution of class notice. Some of this information has already been provided in connection with the conditional certification of a collective action for Count I. However, because the temporal scope of this class is larger than that of the collective action conditionally certified for Count I, additional disclosure is necessary. Accordingly, the Court will order UTi to produce to the plaintiff within twenty days of this order the names, addresses (current or last known), dates of employment and worksite locations of all forklift operators employed directly by UTi or indirectly through a temporary staffing agency or other such agency at any time on or after September 14, 2004. UTi need not produce again information that has previously been produced.

To assist the Court in deciding the form of the notice to be sent to class members, the Court will order the parties to confer within ten days with the goal of drafting a mutually acceptable notice. Should the parties not agree on the form of the notice, the parties shall submit to the Court's e-mailbox (jpgpd@ilsd.uscourts.gov) on or before May 27, 2011, their respective proposed notices in either Word or WordPerfect format. The Court will reserve ruling on the format of the notice and a distribution plan pending receipt and review of an agreed proposed notice or the parties' proposed notices. <u>The notice must specifically address the potential confusion that may result from this notice in light of the FLSA collective action notice that class members may also receive.</u>

## III.   Conclusion

For the foregoing reasons, the Court:

- **GRANTS** the plaintiffs' motion for class certification on Counts II, III, IV and V (Doc.

94);

- **CERTIFIES** the following class:

    All current and former employees of UTi Worldwide, Inc. or UTi Integrated Logistics, Inc. in the State of Illinois, whether employed directly by UTi Worldwide, Inc. or UTi Integrated Logistics, Inc. or indirectly through a temporary staffing agency, whose primary job duty is or was to operate a forklift at any time from September 14, 2004, to the present.

- **APPOINTS** plaintiff Edward Earl Nicholson as class representative;

- **APPOINTS** Richard M. Paul III, of Stueve Siegel Hanson LLP, and Mark Potashnick, of Weinhaus & Potashnick, as class counsel;

- **ORDERS** UTi to produce to the plaintiff within thirty days of this order the names, addresses (current or last known), dates of employment and worksite locations of all forklift operators employed directly by UTi or indirectly through a temporary staffing agency or other such agency at any time on or after September 14, 2004, that have not previously been produced; and

- **ORDERS** the parties to confer within ten days with the goal of drafting a mutually acceptable class notice, which they shall submit to the Court on or before May 27, 2011. Should the parties not agree on the form of the notice, on or before May 27, 2011, the parties shall submit to the Court's e-mailbox their respective proposed notices.

**IT IS SO ORDERED.**
**DATED: May 10, 2011**

                                          s/ J. Phil Gilbert
                                          **J. PHIL GILBERT**
                                          **DISTRICT JUDGE**